UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

LADREISHA SLAUGHTER,

    Plaintiff

v.   Civil Action No.:   3:26-cv-00158

JOSEPH DORSEY, in his individual capacity;
SHAWN LESTER, in his individual capacity;
CABELL COUNTY COMMISSION,
A West Virginia County Government;

    Defendants

**COMPLAINT**

Plaintiff, Ladreisha Slaughter, for her Complaint against the defendants, states as follows:

**I.    JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988.

2. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as Plaintiff's federal claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Cabell

County, West Virginia, within the Huntington Division of the Southern District of West Virginia.

## II. PARTIES

4. Plaintiff Ladreisha Slaughter is a resident of Cabell County, West Virginia.

5. Defendant Dorsey is a home confinement officer employed by the Cabell County Commission. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

6. Defendant Lester is a supervisory home confinement officer employed by the Cabell County Commission. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

7. Defendant Cabell County Commission is a political subdivision of the State of West Virginia and the governing authority for Cabell County. Pursuant to West Virginia law, the Cabell County Commission created and administers the Cabell County Sheriff's Office and Home Confinement, and exercises control, authority, and discipline over its operations and personnel. The Cabell County Commission is a "person" within the meaning of 42 U.S.C. § 1983.

## III. FACTS

8. Plaintiff Ladreisha Slaughter was placed on court-ordered home confinement in Cabell County, West Virginia.

9. Plaintiff remained on home confinement for approximately two years and complied with all conditions imposed upon her. She incurred no violations, write-ups, or disciplinary actions.

10. During her period of home confinement, Plaintiff was subject to the supervision of Cabell County Home Confinement officers, including Defendant Dorsey.

11. Plaintiff was actively working to regain custody of her young daughter and was required to demonstrate stability, compliance, and parental involvement as part of that process.

12. Plaintiff's daughter had a Thanksgiving school lunch scheduled at her elementary school in Cabell County.

13. Earlier in the week of the scheduled lunch, Plaintiff contacted home confinement staff and was informed that she would be permitted to attend the event if she called on the day of the lunch.

14. On the morning of the Thanksgiving lunch, Plaintiff called Cabell County Home Confinement to confirm her attendance.

15. Defendant Dorsey answered the call.

16. When Plaintiff requested permission to attend her daughter's school lunch, Defendant Dorsey responded by referring to the request as "horseshit."

17. Defendant Dorsey nevertheless stated that Plaintiff could attend the lunch if she returned by a specified time.

18. Plaintiff did not argue, raise her voice, or otherwise act disrespectfully during the call.

19. Later that morning, Plaintiff went to the home confinement office to make a required payment.

20. As she was leaving the office, Plaintiff requested grievance forms in order to complain about Defendant Dorsey's conduct.

21. A secretary employed by Cabell County Home Confinement observed Plaintiff take the grievance forms.

22. Plaintiff had previously filed grievances against home confinement officers yet no action was taken.

23. Shortly after Plaintiff left the office, Defendant Dorsey called Plaintiff.

24. During that call, Defendant Dorsey asked Plaintiff, "Did you really take grievance forms?"

25. Plaintiff responded that she had.

26. Defendant Dorsey immediately placed Plaintiff on lockdown and stated that she was not permitted to go anywhere.

27. Defendant Dorsey further threatened Plaintiff by stating that if she went anywhere, she would be taken to jail.

28. Defendant Dorsey did not identify any violation of home confinement conditions and cited no rule or policy authorizing the lockdown.

29. The sole reason for the lockdown and threat of incarceration was Plaintiff's decision to complain and request grievance forms.

30. As a direct result of Defendant Dorsey's actions, Plaintiff was prevented from attending her daughter's Thanksgiving school lunch.

31. Plaintiff's daughter was expecting Plaintiff to attend the event.

32. Plaintiff missed a significant opportunity to maintain and strengthen her relationship with her child.

33. Later, Defendant Lester, a supervisory official with Cabell County Home Confinement, contacted Plaintiff.

34. Defendant Lester acknowledged that Plaintiff had been placed on lockdown.

35. Defendant Lester stated that the lockdown "shouldn't have happened" and characterized Defendant Dorsey's conduct as a "misunderstanding" or "joking."

36. Defendant Lester informed Plaintiff that the lockdown would be lifted.

37. Defendant Lester did not indicate that Defendant Dorsey would be disciplined or that corrective action would be taken.

38. Defendant Dorsey had previously engaged in a pattern of abusive and demeaning conduct toward Plaintiff, including yelling, profanity, threats of arrest, and derogatory remarks.

39. Defendant Dorsey made racially charged comments toward Plaintiff, including comparing her appearance to "Aunt Jemima" while cleaning the home confinement office to pay off her fees and referring to her as a "queenpin."

40. Defendant Dorsey's conduct caused Plaintiff severe emotional distress, anxiety, and humiliation.

41. Plaintiff has sought counseling and treatment related to Defendants' conduct.

42. Defendants' actions would deter a person of ordinary firmness from exercising the right to complain about official misconduct.

## IV. CAUSES OF ACTION

COUNT I
First Amendment Retaliation
(42 U.S.C. § 1983)
Against Defendant Dorsey (Individual Capacity)

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Plaintiff engaged in protected activity under the First Amendment by complaining about Defendant Dorsey's conduct and requesting grievance forms to seek redress for official misconduct.

45. Defendant Dorsey took adverse action against Plaintiff by placing her on lockdown and threatening her with incarceration.

46. Defendant Dorsey's actions would deter a person of ordinary firmness from exercising the right to complain about official misconduct.

47. Plaintiff's protected activity was the substantial and motivating factor for Defendant Dorsey's decision to place Plaintiff on lockdown and threaten her with jail.

48. Defendant Dorsey acted intentionally, knowingly, and with reckless disregard for Plaintiff's clearly established constitutional rights.

49. Defendant Dorsey's conduct violated Plaintiff's rights under the First Amendment to the United States Constitution.

COUNT II
Supervisory Liability / Ratification
(42 U.S.C. § 1983)
Against Defendant Lester (Individual Capacity)

50. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Defendant Lester was a supervisory official with authority over Defendant Dorsey and the operation of Cabell County Home Confinement.

52. Defendant Lester had actual knowledge that Plaintiff had been placed on lockdown in retaliation for requesting grievance forms.

53. Defendant Lester acknowledged that the lockdown "shouldn't have happened" and minimized Defendant Dorsey's conduct as a "misunderstanding" or "joking."

54. Defendant Lester failed to discipline Defendant Dorsey, failed to take corrective action, and thereby ratified the unconstitutional retaliation.

55. Defendant Lester's deliberate indifference and ratification were a proximate cause of the violation of Plaintiff's First Amendment rights.

COUNT III
Municipal Liability (Monell)
(42 U.S.C. § 1983)
Against Defendant Cabell County Commission

56. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Defendant Cabell County Commission is responsible for the policies, customs, practices, training, and supervision of Cabell County Home Confinement officers.

58. Defendant Cabell County Commission maintained customs, practices, or usages that permitted retaliation against individuals who complained about or sought to grieve officer misconduct.

59. Defendant Cabell County Commission failed to adequately train and supervise home confinement officers regarding constitutional limits on their authority and the prohibition against retaliation.

60. Supervisory officials minimized and ratified unconstitutional conduct, demonstrating deliberate indifference to the constitutional rights of individuals under home confinement supervision.

61. The policies, customs, practices, and failures of Defendant Cabell County Commission were the moving force behind the violation of Plaintiff's constitutional rights.

## COUNT IV
## STATE LAW CLAIMS

Against Dorsey and Cabell County under West Virginia Law

62. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

63. The actions of Dorsey described above constitute the following torts under the common law of the State of West Virginia:

> A. Outrageous Conduct / Intentional Infliction of Emotional Distress – The conduct of Dorsey, including targeting Plaintiff with racially derogatory and dehumanizing slurs, including referring to her as "Aunt Jemima" and a "queenpin," verbally abusing Plaintiff by characterizing a significant milestone in her parental reunification process—a school lunch with her daughter—as "horse shit," and explicitly weaponizing his state-granted authority to retaliate against Plaintiff for exercising her First Amendment right to file a grievance. Said conduct was carried out intentionally or with reckless disregard for Plaintiff's rights, and with the purpose or effect of causing severe emotional distress. As a direct and proximate result of this conduct, Plaintiff did in fact suffer severe emotional distress, including but not limited to anxiety, humiliation, fear, and post-traumatic stress.

64. The conduct described above occurred within the scope of the individual defendants' employment as law enforcement officers for the Cabell County Commission.

65. The following additional claims are asserted against the Cabell County Commission:

>A. Negligent Hiring – The municipal defendant failed to exercise reasonable care in the hiring of officers, including those who lacked proper training, temperament, or qualifications to lawfully and safely perform law enforcement duties.

>B. Negligent Retention – The municipal defendants retained officers they knew or should have known posed an unreasonable risk of violating citizens' rights, including by failing to respond to patterns of unconstitutional behavior.

>C. Negligent Supervision – The municipal defendants failed to properly supervise officers, failed to monitor their conduct, and failed to take corrective or disciplinary action when necessary, thereby contributing to the harms suffered by Plaintiff.

66. As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered emotional distress, reputational harm, and loss of liberty.

## V.    PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Plaintiff Ladreisha Slaughter respectfully requests that this Court:

A. Order the Cabell County Commission to develop and implement written policies, training programs, and supervisory procedures that:

1. Develop and implement written policies expressly prohibiting retaliation against individuals on home confinement for filing or requesting grievance forms;
2. Establish and maintain a formal, accessible grievance procedure for individuals on home confinement that includes independent supervisory review;
3. Require mandatory training for all home confinement staff on First Amendment protections for supervisees, and anti-discrimination standards, professional conduct and prohibitions against verbal abuse, threats, and racial harassment;
4. Implement supervisory review protocols for lockdown decisions and restrictions imposed outside of court-ordered conditions; and,
5. Establish clear disciplinary procedures for officers who engage in retaliation, discrimination, or abuse of authority;

B. Award compensatory damages in an amount to be determined at trial that will fairly and reasonably compensate Plaintiff for:

1. Past, present, and future medical expenses and lost wages;
2. Past, present, and future physical pain, emotional suffering, psychological distress, loss of enjoyment of life, and mental anguish;
3. All other compensatory damages allowed by law and proven at trial.

C. Award punitive damages against the individual defendants in an amount sufficient to punish and deter future constitutional violations.

D. Award Plaintiff her reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law.

E. Grant such other and further relief as the Court deems just, proper, and equitable under the circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully Submitted,


s/Richard W. Weston
Richard W. Weston
WESTON INJURY LAW, PLLC
P.O. Box 21733
Lexington, KY 40522
859.636.1970
rich@weston.law